IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ARMANDO A. MARROQUIN,

Plaintiff,

v.

DR. R. BOWMAN, et al.,

Defendants.

No. C 09-0713 SBA (PR)

**ORDER DISMISSING CLAIMS WITHOUT PREJUDICE**

## INTRODUCTION

Plaintiff, a state prisoner currently being held in La Palma Correctional Center (LPCC) in Eloy, Arizona, has filed a pro se civil rights action pursuant to 42 U.S.C. § 1983 alleging constitutional violations stemming from his incarceration at Salinas Valley State Prison (SVSP). Plaintiff named the following Defendants: SVSP Associate Warden; Physicians R. Bowman and S. Pajong; and Registered Nurse L. Fox. Plaintiff requested monetary damages and injunctive relief.

On May 2, 2011, the Court issued an Order Dismissing Complaint With Leave to Amend. The Court indicated that Plaintiff had attempted to state two claims against Defendants in his original complaint: (1) a deliberate indifference to serious medical needs claim against Defendants Bowman, Pajong and Fox for denying him "access" to medical care, rehabilitation therapy, as well as programs and services; and (2) an equal protection claim against Defendant Bowman for discriminating against Plaintiff with regard to "medical access and rehabilitation programs." (May 2, 2011 Order at 3-4.) The Court also dismissed Plaintiff's claims for injunctive relief as moot because they were against SVSP officials and he was no longer incarcerated at SVSP. (Id. at 3.) The Court dismissed with leave to amend the deliberate indifference claim because Plaintiff did not "allege that Defendants were aware of [his] serious medical need." (Id.) The Court directed Plaintiff to amend this claim "if he can, in good faith, allege facts demonstrating that Defendants knew [he] faced a 'substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.'" (Id. (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).) Plaintiff's equal protection claim was also dismissed with leave to amend because he did not allege

that "Defendant Bowman denied [him] access to treatment and rehabilitation programs on the basis of his membership in a suspect class -- i.e., on the basis of his race." (Id. at 4.)

On June 2, 2011, Plaintiff filed his first amended complaint (FAC) (docket no. 8). The Court now reviews the FAC to determine whether it states cognizable claims for relief.

## BACKGROUND

In its May 2, 2011 Order, the Court included the following background based on Plaintiff's allegations in his original complaint:

> On February 28, 2008, Defendant Pajong denied Plaintiff "access to programs and services under ADA-RA.[1]" (Compl. at 3-B.) Defendant Pajong also denied Plaintiff "adequate medical care" and "treatment and therapy." (Id.)
>
> On August 24, 2008, Defendant Bowman denied Plaintiff's "request of access to programs and services under ADA-RA." (Id. at 3-A.) Defendant Bowman also denied Plaintiff "adequate medical care," "treatment and therapy" and "medical supplies." (Id.)
>
> On April 01, 2008, Defendant Fox denied Plaintiff "access to programs and services under ADA-RA." (Id. at 3-C.) Defendant Fox also denied Plaintiff "all medical care," "treatment and rehabilitation therapy" and "medical supplies." (Id.)

(May 2, 2011 Order at 1-2 (footnote added).)

In his FAC, Plaintiff claims that Defendants "were and are deliberately indifferent to Plaintiff's serious medical needs when they denied him all access to medical care, ADA benefits, rehabilitative therapy, and any and/or all other programs and services under the ADA-RA." (FAC at 3.) However, Plaintiff does not specify the dates on which these violations occurred. He adds that Defendants have "failed and/or refused to take any and/or all reasonable steps to alleviate and/or abate the problem." (Id.) Plaintiff also claims that "Defendants have caused additional severe suffering as to Plaintiff's actual medical condition, because they were involved in the transferring of Plaintiff to an out of state facility." (Id.) Plaintiff alleges that "[a]t that facility, [he] was denied medical care and, as a result, has experienced severe pain and suffering." (Id.)

In his response to the Court's May 2, 2011 Order -- dismissing with leave to amend the deliberate indifference claim -- Plaintiff claims that "Defendants were and are aware of [his]

---

[1] Plaintiff does not elaborate on what "ADA-RA" stands for; however, the Court assumes that it relates to the Americans With Disability Act.

2

harmful condition since January 2005 (see Exhibit A and B)." (Id.)

The Court notes that Plaintiff has failed to attach any exhibits to his FAC. On June 2, 2011, Plaintiff filed a letter informing the Court that "[t]he exhibits mentioned in the [FAC] are not sent because the facility law library refused to make any legal copies for [him] until he pays for the last copies that he made for his petition for habeas corpus." (Pl.'s June 2, 2011 Letter at 1.) Plaintiff "requests this honorable Court to order La Palma Correctional Center to allow him to duplicate any and all documents that Plaintiff needs to send to the Courts . . . ." (Id.) The Court will address Plaintiff's request below.

Plaintiff has indicated which exhibits he intended to attach, including his "request for medical care from SVSP" and his "CDC 1824 and CDC 602 forms from SVSP," and the Court notes that these exhibits were all attached to his original complaint; therefore, the Court will review the exhibits from the original complaint.

Plaintiff has attached the 602 inmate appeal log no. SVSP 06-2429, which was submitted to the highest level of review -- the Director's level -- and denied on November 14, 2006. (FAC at 2; Compl., Ex. 1.) Plaintiff alleges that he exhausted the claims raised in his FAC in log no. SVSP 06-2429. (Id.) Therefore, the Court will include the following background from the Director's Level Appeal Decision of this 602 appeal:

> I. Appellant's Argument: It is appellant's position that his left shoulder dislocates frequently and he cannot pick up heavy objects due to his back problems. He says that his left knee and ankle also hurt. The appellant states that for three years he has asked for help and has not received much. He has dislocated his knee twice and his shoulder several times. He asks for a pressure mattress with adjustable support for his back, shoulder, and knee. He also asks for orthopedic shoes. He says that medical staff at Salinas Valley State Prison (SVSP) only gave him pills and he asks to be transferred to an institution that provides assistance for his needs.

(Id.) It is unclear what caused Plaintiff's aforementioned ailments because he does not specify this information in either his complaint or FAC. Based on the exhibits attached to the original complaint, the Court notes there is a report that Plaintiff "slipped in 2022 while in custody sustaining multiple injuries." (SVSP Consultation Report dated Mar. 22, 2006 at 1.) There is another exhibit stating the Plaintiff has a "[h]istory of gunshot wound to thorax." (Salinas Valley Radiologist, Inc. Report dated Mar. 3, 2006 at 1.) Finally, there is yet another exhibit stating that in

3

October, 2007, Plaintiff "hurt [his] back because [he] lift[ed] up the mop bucket with water." (602 appeal log no. 08-0063 dated Feb. 4, 2008 at 1.) Even though the reason for his aforementioned ailments is unclear, the Court finds that, at this time, such information is unnecessary because, as mentioned above, Plaintiff complains more about Defendants' denial of his "access to programs and services under ADA-RA" in 2008. (Compl. at 3A-3C.)

The first level appeal decision of 602 appeal log no. 06-2429 is not attached as an exhibit to Plaintiff's complaint; therefore, the Court can only review the second level appeal decision and the director's level appeal decision. The Director's Level Appeal Decision of this 602 appeal includes an explanation the decisions made at both the second and Director's levels as follows:

> II.   Second Level's Decision: The reviewer found that the appellant was seen by Dr. Bowman on August 24, 2006. The appellant was prescribed an elastic knee support, and elastic back support, and that alternative cuffing via Martin Restraints be utilized. A CDC Form 7410, Comprehensive Accommodation Chrono was completed for these accommodations and appliances. The appellant received a magnetic resonance imaging (MRI) of his left shoulder on May 12, 2066, and x-rays of the lumbar spine and knees on March 3, 2006. The MRI and all the x-rays were normal. The appellant's complaints were not substantiated by any physical findings. The appellants request for a pressure mattress and orthopedic shows were not medically indicated. The appellant does not meet the criteria for inclusion in the Disability Placement Program (DPP). The appeal is granted in part at the Second Level of Review.
>
> III.   Director's Level Decision: Appeal is denied.
>
> A.   Findings: At the Director's Level of Review the appellant asks that based on his medical file he be considered as DPP and Americans with Disabilities Act.
>
> The appellant must understand that a DPP designation does not affect his health care, diagnosis, and treatment. The CDC Form 1845, Disability Placement Program Verification is established to ensure inmates with disabilities get placed into institutions that can accommodated their mobility, eyesight, and hearing needs. Pursuant to the Armstrong Remedial Plan (ARP) Section II.A, "A [']qualified inmate/parolee['] is one with a permanent physical or mental impairment which substantially limits the inmate/parolee's ability to perform a major life activity. Major life activities are functions such as caring for one's self, performing essential manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." The appellant does not meet this criteria and a transfer is not indicated. In addition, SVSP is a DPP facility. The appellant is appropriately housed and cared for at SVSP. After considering the evidence and arguments herein, it has been determined that staff acted appropriately on the appellants request.

( Compl., Ex. 1.)

The Court notes that in his FAC, Plaintiff refers to 602 appeal log no. 06-2429 as the vehicle he used to allegedly exhaust the claims in his FAC.

4

**DISCUSSION**

**I.      Request for Access to Law Library**

Also before the Court is Plaintiff's request for an order directing prison officials at LPCC to allow him access to the law library's xerox machine in order to make copies of the exhibits in support of his FAC. (Pl.'s June 2, 2011 Letter at 1.) The Court construes Plaintiff's request as one asking for access to the law library.

In Bounds v. Smith, the Supreme Court held "that the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." 430 U.S. 817, 828 (1977). Subsequently, the Supreme Court clarified that Bounds did not establish a substantive right to law library access, but rather signaled that in order for prisoners' right of access to the courts to be meaningful, they must be given adequate resources to prepare. See Lewis v. Casey, 518 U.S. 343, 350-51 (1996). The Court explained:

> Because Bounds did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense. That would be the precise analog of the healthy inmate claiming constitutional violation because of the inadequacy of the prison infirmary. Insofar as the right vindicated by Bounds is concerned, "meaningful access to the courts is the touchstone," and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim. He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint.

Id. at 351.

In the instant case, Plaintiff has not claimed any actual harm caused by his alleged lack of access to the LPCC law library or, specifically, the law library's xerox machine. Furthermore, as mentioned above, Plaintiff attached the relevant exhibits to his original complaint. Therefore, the Court was able to review these exhibits, and thus Plaintiff did not suffer any harm. Accordingly, Plaintiff's request for an order directing prison officials at LPCC to provide him with law library

5

access, including access to the xerox machine, (docket no. 11) is DENIED at this time.

## II. Review of Claims in FAC

### A. Standard of Review

A federal court must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. Id. § 1915A(b)(1), (2). Pro se pleadings must be liberally construed. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. West v. Atkins, 487 U.S. 42, 48 (1988).

### B. Legal Claims

#### 1. Injunctive Relief

Plaintiff seeks reconsideration of the Court's dismissal of his claims for injunctive relief in the form of immediate medical care and access to programs at SVSP. (FAC at 3-C.)

In its Order dated May 2, 2011, as mentioned above, the Court dismissed as moot Plaintiff's claims for injunctive relief, stating:

> Plaintiff seeks injunctive relief. The jurisdiction of the federal courts depends on the existence of a "case or controversy" under Article III of the Constitution. Pub. Util. Comm'n of State of Cal. v. FERC, 100 F.3d 1451, 1458 (9th Cir. 1996). A claim is considered moot if it has lost its character as a present, live controversy and if no effective relief can be granted; where the question sought to be adjudicated has been mooted by developments subsequent to filing of the complaint, no justiciable controversy is presented. Flast v. Cohen, 392 U.S. 83, 95 (1968). Where injunctive relief is requested, questions of mootness are determined in light of the present circumstances. See Mitchell v. Dupnik, 75 F.3d 517, 528 (9th Cir. 1996). When an inmate has been transferred to another prison and there is no reasonable expectation nor demonstrated probability that he will again be subjected to the prison conditions from which he seeks injunctive relief, the claim for injunctive relief should be dismissed as moot. See Dilley v. Gunn, 64 F.3d 1365, 1368-69 (9th Cir. 1995).
>
> Because all Plaintiff's claims for injunctive relief are against SVSP officials and he is no longer incarcerated at SVSP, his claims are DISMISSED as moot. See

Mitchell, 75 F.3d at 528.

(May 2, 2011 Order at 2-3.)

In his FAC, Plaintiff claims that his claims for injunctive relief are "no[t] moot because there is, in fact, a reasonable expectation that Plaintiff would again be subject to challenge the issues from which he seeks injunctive relief." (FAC at 3-C.) He explains that in "August 2013," he "will come back to California, and it is more than likely that will be to SVSP and he will again be subjected to the same prison conditions (lack of medical care and programs)." (Id.)

Plaintiff's arguments are unavailing. First, the record shows that, to date, Plaintiff is still incarcerated at LPCC in Arizona. Second, there is no guarantee that Plaintiff will be housed at SVSP if he is even transferred back to California. Accordingly, the Court DENIES his motion for reconsideration of the dismissal of his claims for injunctive relief.

### 2. **Deliberate Indifference to Medical Needs**

In its May 2, 2011 Order, the Court stated:

> Plaintiff alleges that Defendants Bowman, Pajong and Fox were deliberately indifferent to his serious medical needs when they denied him "access" to medical care, rehabilitation therapy, and programs and services. However, Plaintiff does not allege that Defendants were aware of Plaintiff's serious medical need. Therefore, Plaintiff has not stated a cognizable deliberate indifference claim against Defendants Bowman, Pajong and Fox. Accordingly, the Court DISMISSES Plaintiff's claim of deliberate indifference to serious medical needs with leave to amend. Plaintiff may reassert this claim against Defendants Bowman, Pajong and Fox in an amended complaint if he can, in good faith, allege facts demonstrating that Defendants knew Plaintiff faced a "substantial risk of serious harm and disregards that risk by failing to take reasonable [measures] to abate it." Farmer [v. Brennan, 511 U.S. 825, 837 (1994)].

(May 2, 2011 Order at 3.)

In his FAC, Plaintiff claims that Defendants "were and are aware of [his] harmful conditions since January 2005 (see Exhibit A and B)." (FAC at 3.) Plaintiff adds: "They have failed and/or refused to take any and/or all reasonable steps to alleviate and/or abate the problem. On the contrary, Defendants have caused additional severe suffering as to Plaintiff's actual medical condition, because they were involved in the transferring of Plaintiff to an out of state facility . . . ." (Id.) Furthermore, Plaintiff claims "[a]t that facility Plaintiff was denied medical care and, as a result, has experienced severe pain and suffering." (Id.)

7

1     First, if Plaintiff seeks to bring an action in federal court about the conditions of confinement
2 at either Central Arizona Detention Center (CADC) in Florence, Arizona (where he was incarcerated
3 prior to LPCC) or at LPCC, he must file a civil rights complaint under 42 U.S.C. § 1983 in the
4 United States District Court for the District of Arizona.

5     Second, Plaintiff was also directed to allege facts sufficient to show that Defendants knew
6 Plaintiff faced a "substantial risk of serious harm and disregards that risk by failing to take
7 reasonable [measures] to abate it." (May 2, 2011 at 3.)  It is also important that Plaintiff must show
8 that he exhausted his administrative remedies with respect to the claims in his FAC before he filed
9 his suit.  Plaintiff's FAC simply reiterates the same vague allegations that were stated in the original
10 complaint, including allegations that "Defendants were and are deliberately indifferent to [his]
11 serious medical needs when they denied him all access to medical care, ADA benefits, rehabilitative
12 therapy, and any/or all other programs and services under the ADA-RA."  (FAC at 3.)  However,
13 nowhere in his FAC does Plaintiff allege facts sufficient to show what particular actions --
14 specifically by Defendants Bowman, Pajong and Fox -- rose to the level of constitutional violations.
15 Moreover, Plaintiff fails to indicate the exact dates of when these violations took place; therefore,
16 the Court will consider the dates in his original complaint, which indicate that these violations took
17 place in 2008.  Even if the Court considers his allegations from his original complaint, Plaintiff had
18 not cured the deficiencies of his original claims by alleging sufficient facts showing that Defendants
19 Bowman, Pajong and Fox knew Plaintiff faced a "substantial risk of serious harm and disregards that
20 risk by failing to take reasonable measures to abate it."  See Farmer, 511 U.S. at 837.  Plaintiff
21 makes a vague claim that "Defendants were and are aware of [his] harmful conditions since January
22 2005 (see Exhibit A and B)." (FAC at 3.)  Plaintiff's conclusory statement does not cure the
23 pleading deficiency identified in the Court's Order dismissing the original complaint with leave to
24 amend.

25     Even if Plaintiff's statements in the FAC were enough to cure the pleading deficiencies,
26 another question which must be answered before Plaintiff can proceed with any claims for monetary
27 damages is whether he has exhausted available administrative remedies with respect to his claims.
28 Plaintiff's 602 appeal log no. 06-2429, which, again, was the vehicle he used to exhaust his claims,

8

relates to alleged violations in 2006. Plaintiff answered "YES" to the question, "Is the last level to which you appealed the highest level available to you?" (FAC at 2.) However, he did not allege that he exhausted his claims as to the aforementioned violations in 2008.

The Prison Litigation Reform Act of 1995 (PLRA) amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Under this section, an action must be dismissed unless the prisoner exhausted his available administrative remedies before he filed suit, even if the prisoner fully exhausts while the suit is pending. See McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). Exhaustion of all "available" remedies is mandatory; those remedies need not meet federal standards, nor must they be "plain, speedy and effective." Id. at 524; Booth v. Churner, 532 U.S. 731, 739-40 & n.5 (2001). Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit. Id. at 741. The purposes of the exhaustion requirement include allowing the prison to take responsive action, filtering out frivolous cases and creating an administrative record. See Porter, 534 U.S. at 525.

A prisoner's concession to non-exhaustion is a valid ground for dismissal, so long as no exception to exhaustion applies. Wyatt v. Terhune, 315 F.3d 1108, 1120 (9th Cir.), cert. denied, 540 U.S. 810 (2003). Accordingly, a claim may be dismissed without prejudice if it is clear from the record that the prisoner has conceded that he did not exhaust administrative remedies. Id.

Here, by only referring to 602 appeal log no. 06-2429, Plaintiff concedes he has only exhausted his claims relating to violations in 2006 because the record shows the only alleged violations referred to in that appeal occurred in 2006. Plaintiff offers no explanation as to why he did not exhaust claims pertaining to events in 2008; therefore, the Court construes the evidence as Plaintiff's concession that he has not exhausted his administrative remedies as to the claims relating to violations in 2008. Accordingly, Plaintiff's claim of deliberate indifference to serious medical

9

1 needs is DISMISSED without prejudice to refiling after exhausting California's prison
2 administrative process. See McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002) (action
3 must be dismissed without prejudice unless prisoner exhausted available administrative remedies
4 before he filed suit, even if prisoner fully exhausts while the suit is pending).

### 3. Equal Protection

Plaintiff alleged that Defendant Bowman discriminated against him with regard to "medical access and rehabilitation programs." (Compl. at 3A.) In its May 2, 2011, the Court also dismissed his equal protection claims with leave to amend, stating:

> Plaintiff does not allege that Defendant Bowman denied Plaintiff access to treatment and rehabilitation programs on the basis of his membership in a suspect class -- i.e., on the basis of his race. Therefore, Plaintiff has not stated a cognizable equal protection claim against Defendant Bowman. Accordingly, the Court DISMISSES Plaintiff's equal protection claim with leave to amend. Plaintiff may reassert this claim against Defendant Bowman in an amended complaint if he can, in good faith, allege facts demonstrating Defendant Bowman "acted at least in part because of plaintiff's membership in a protected class." Serrano [v. Francis, 345 F.3d 1071, 1081-82 (9th Cir. 2003) (To state a claim for relief, the plaintiff must allege that the defendant state actor acted at least in part because of plaintiff's membership in a protected class.)].

May 2, 2011 Order at 4.

In his FAC, Plaintiff claims that "Defendants denied him access to ADA-RA benefits and programs based on Plaintiff's alienage . . . ." (FAC at 3-B.)

The Equal Protection Clause commands that all persons similarly situated should be treated alike. City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985). To state a claim for relief under the Equal Protection Clause, a plaintiff must allege that the defendant acted at least in part because of plaintiff's membership in a protected class. See Serrano v. Francis, 345 F.3d 1071, 1081-82 (9th Cir. 2003). Outside the prison context, discrimination on the basis of race and discrimination based on the exercise of a fundamental constitutional right ordinarily are subject to strict scrutiny; discrimination on the basis of gender and alienage are subject to intermediate scrutiny; and discrimination on any other basis is subject to lenient rational basis review. See Cleburne, 473 U.S. at 440-41. Proof of a discriminatory intent or purpose is also required. City of Cuyahoga Falls, Ohio v. Buckeye Cmty. Hope Found., 538 U.S. 188, 194 (2003).

Here, Plaintiff claims discrimination based on alienage, which is subject to intermediate

10

1  scrutiny. See Cleburne, 473 U.S. at 440-41. However, the Court need not decide whether Plaintiff
2  has cured the pleading deficiencies of his equal protection claim because, as explained above, his
3  equal protection claim is also unexhausted because the record shows that it was not included in 602
4  appeal log no. 06-2429. Therefore, the only issues exhausted by Plaintiff pertain to events that
5  occurred in 2006. Accordingly, Plaintiff's equal protection claim is also DISMISSED without
6  prejudice to refiling after exhausting California's prison administrative process. See McKinney, 311
7  F.3d at 1199-1201.

### 4. **Retaliation**

In his FAC, Plaintiff raises a new claim and alleges that he was transferred from SVSP to another prison "out of state" due to "Defendants' adverse conduct [which was] punishment for Plaintiff's legal action against them." (FAC at 3-A.) Plaintiff objects to this transfer because his classification at the "out of state" prison (which initially was at CADC) "was more severe than the classification Plaintiff had faced while confined at SVSP . . . [because] he was denied all medical care . . . ." (Id..) The transfer of Plaintiff does not in and of itself implicate his constitutional rights because prisoners have no constitutional right to incarceration in a particular institution. See Olim v. Wakinekona, 461 U.S. 238, 244-48 (1983).

Plaintiff claims that the transfer nevertheless violates his constitutional rights because it was a "retaliatory from Defendants." (FAC at 3-A.) Retaliation by a state actor for the exercise of a constitutional right is actionable under 42 U.S.C. § 1983, even if the act, when taken for different reasons, would have been proper. See Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 283-84 (1977).

Plaintiff alleges that prior to his transfer he requested an "ADA-RA chrono of which he is entitled based on his back conditions and other medical problems that he has been suffering and [is] suffering now." (FAC at 3-A.) He also claims that he "challenged their denial of his medical claims and ADA-RA benefits" by filing a "legal action against them." (Id.) However, the simple allegation that the transfer occurred after the a "legal action" were filed does not, without more, establish retaliation; rather, Plaintiff must allege a nexus between the two. See Huskey v. City of San Jose, 204 F.3d 893, 899 (9th Cir. 2000) (retaliation claim cannot rest on the logical fallacy of post hoc,

11

ergo propter hoc, i.e., "after this, therefore because of this"). Here, Plaintiff does not allege any nexus between Plaintiff's "legal action" and the transfer. To the contrary, Plaintiff alleges that Defendants transferred him because he was "cleared" or "any medical problems." (FAC at 3-A.) Consequently, the allegations in the FAC indicate that his transfer was not done in retaliation for the exercise of his constitutional rights. Accordingly, the FAC fails to state a cognizable claim for retaliation under § 1983. Furthermore, even if Plaintiff could have stated a cognizable retaliation claim, this claim is also unexhausted because, as explained above, the only issues exhausted by Plaintiff pertain to events that occurred in 2006. Plaintiff's transfer and the alleged retaliatory actions by Defendants did not occur in 2006; therefore, any retaliation claims stemming from the transfer are unexhausted. Accordingly, this claim is also DISMISSED without prejudice to refiling after exhausting California's prison administrative process. See McKinney, 311 F.3d at 1199-1201.

**CONCLUSION**

For the foregoing reasons, the Court orders as follows:

1. Plaintiff's request for an order directing prison officials at LPCC to provide him with law library access, including access to the xerox machine, (docket no. 11) is DENIED at this time.

2. The Court DENIES his motion for reconsideration of the dismissal of Plaintiff's claims for injunctive relief.

3. Plaintiff's claims of deliberate indifference to serious medical needs, equal protection and retaliation in his FAC are DISMISSED without prejudice to refiling after exhausting California's prison administrative process. See McKinney, 311 F.3d at 1199-1201.

4. The Court has rendered its final decision on this matter; therefore, this Order TERMINATES Plaintiff's case.

5. The Clerk of the Court shall terminate all pending motions and close the file.

IT IS SO ORDERED.

DATED: 9/1/11

SAUNDRA BROWN ARMSTRONG
United States District Judge

G:\PRO-SE\SBA\CR.09\Marroquin0713.dismiss(UNEXH).wpd    12

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

ARMANDO ANTONIO MARROQUIN,

        Plaintiff,

  v.

MD BOWMAN et al,

        Defendant.

Case Number: CV09-00713 SBA

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on September 1, 2011, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Armando Antonio Marroquin T-86698
La Palma Correctional Center, MA
5501 N. La Palma Road
Eloy, AZ 85131

Dated: September 1, 2011

                                Richard W. Wieking, Clerk
                                By: LISA R CLARK, Deputy Clerk